### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BAUDELAIRE TCHOUALA,** | : | **No. 3:26cv887** |
| **Petitioner** | : | |
| | : | **(Judge Munley)** |
| **v.** | : | |
| | : | |
| **CRAIG LOWE,** | : | |
| **Respondent** | : | |

### MEMORANDUM ORDER

Before the court is a *pro se* motion to enforce habeas relief filed by Petitioner Baudelaire Tchouala, an immigration detainee in the custody of the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE") at the Pike County Correctional Facility ("Pike CCF"). (Doc. 19). For the reasons set forth below, Tchouala's motion will be denied.

**Background**

Tchouala is a native and citizen of Cameroon. (Doc. 8-2, Resp. Ex. 1, Form I-213, at 4). On August 9, 2016, petitioner was admitted into the United States as a nonimmigrant on an F-1 visa, with authorization to remain in the country for a temporary period not beyond January 19, 2017. (Id. Ex. 1, Non-Immigrant Visa ("NIV") Record, at 8-9; Doc. 8-3, Resp. Ex. 2, Notice to Appear at 2). However, Petitioner remained in the United States past that date without authorization. (Id. Ex. 1 Form I-213 at 5; Id. Ex. 2, Notice to Appear at 2).

According to respondent, Tchouala filed an application for withholding of removal on May 23, 2017. (Doc. 8, Resp. Br. at 2). Respondent maintains that the application remains pending. (Id.) Respondent further contends that, on August 4, 2020, an I-130 petition for Alien Relative and an I-485 Application to Register Permanent Residence or Adjust Status were filed on petitioner's behalf. (Id.) Nonetheless, both applications were denied on April 24, 2022. (Id.)

On December 7, 2023, Tchouala pled guilty to conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h) in the United States District Court for the Southern District of Texas. (Doc. 8-2, Resp. Ex. 1, S.D. Tex Judgment at 36). As a result, Tchouala was sentenced to eighteen (18) months imprisonment on June 20, 2024 and two (2) years of supervised release. (Id. at 38).

On July 24, 2024, ICE Enforcement and Removal Operations ("ERO") Williamsport encountered Tchouala pursuant to the Criminal Alien Program while he was incarcerated at the Low Security Correctional Institution Allenwood in White Deer, Pennsylvania. (Doc. 8-2, Resp. Ex. 1, Form I-213, at 5). ICE Officers determined that petitioner was removable from the United States and, as a result, issued a notice of action and a warrant for his arrest. (Id.)

On April 9, 2025, ICE charged petitioner as a deportable alien for violating the following provisions of the Immigration and Nationality Act ("INA"): 1) Section

2

237(a)(1)(B) for overstaying his visa; 2) Section 237(a)(2)(A)(iii) for being convicted of an aggravated felony relating to laundering monetary instruments or engaging in transactions involving property derived from specified unlawful activity; and 3) Section 237(a)(2)(A)(i) for being convicted of a crime involving moral turpitude. (Doc. 8-3, Resp. Ex.2, Form I-831 at 5).  ICE then issued a Notice to Appear for a hearing before an IJ scheduled for April 22, 2025. (Id. at Ex. 2, Notice to Appear at 2).  Thereafter, on May 28, 2025, petitioner was placed into ICE custody and transported to Clinton County Correctional Facility. (Doc. 8-11, Resp. Ex. 10, Form I-830 at 1, 2).

At some point, Tchouala appealed his criminal conviction to the United States Court of Appeals for the Fifth Circuit.  On August 11, 2025, the Court of Appeals dismissed petitioner's appeal as frivolous. (Doc. 8-11, Resp. Ex. 7, Mandate at 1). On August 29, 2025, petitioner filed a motion to recall the mandate and reopen his direct appeal. (Doc. 8-9, Resp. Ex. 8, Motion to Recall Mandate at 1).  No further information has been provided regarding the status of that motion.

Meanwhile, on August 13, 2025, an IJ found Tchouala removable and ordered him removed to Cameroon. (Doc. 8-4, Resp. Ex. 3, IJ Order at 1, 3). The IJ also denied petitioner's application for withholding of removal. (Id. at 1).

3

Petitioner timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (Doc. 8-7, Resp. Ex. 6, Filing Receipt at 1).

In January 2026, petitioner requested a Joseph hearing and custody redetermination before an IJ to determine whether he was properly subject to mandatory detention under 8 U.S.C. § 1226(c). (Doc. 8-12, Resp. Ex. 11, Hearing Motion at 5). In an order dated January 12, 2026, the IJ concluded that petitioner had withdrawn his request for custody redetermination without prejudice.[1] (Id. IJ Order at 3).

On January 21, 2026, the BIA ruled on Tchouala's appeal from the IJ's August 13, 2025 removal decision. (Doc. 8-5, Resp. Ex. 4, BIA Decision at 2). The BIA concluded that it could not meaningfully review the appeal because the record of proceedings was incomplete.[2] (Id.) Accordingly, the BIA remanded the matter to the IJ for further action. (Id.)

A month later, the IJ returned the matter to the BIA for adjudication of the previously filed appeal after the deficiencies in the record were resolved. (Doc. 8-

---

[1] It appears that the IJ deemed Tchouala to have withdrawn his motion for custody redetermination based on his representation that his "criminal conviction is on direct appeal" and therefore "is not final for immigration purposes." (Doc. 8-12, Resp. Ex. 11, Hearing Motion at 5).

[2] Specifically, the record did not include a transcript of the hearing before the IJ or the IJ's oral decision. (Doc. 8-5, Resp. Ex. 4, BIA Decision at 2).

4

6, Resp. Ex. 5, IJ Certification at 1). Based on the record supplied by the parties, petitioner's removal proceedings are currently pending.

Tchouala filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 7, 2026. (Doc. 1). By way of a prior memorandum and order, the court granted Tchouala's petition in part. Tchouala v. Lowe, No. 3:26CV887, 2026 WL 1401765 (M.D. Pa. May 19, 2026). Without getting into the granular details, the court determined that Tchouala's detention was governed by 8 U.S.C. § 1226(c) as petitioner has been detained following convictions for certain crimes. Id. at *3. After balancing the factors set forth in German Santos v. Warden Pike Cnty. Corr. Facility, 965 F.3d 203 (3d Cir. 2020), the court concluded that the non-neutral factors weighed in favor of finding petitioner's continued detention unconstitutional. Id. at *5. Accordingly, the court concluded that Tchouala was entitled to a timely bond hearing before a neutral IJ. Id.

The court stated in its memorandum that:

> The relief granted here does not entitle Tchouala to outright release from detention, as requested in his submissions. Rather, because of the violation of his due process rights, the petitioner is entitled to a timely bond hearing before a neutral IJ. At that hearing, the government will bear the burden of justifying Tchouala's continued detention by clear and convincing evidence that "must be individualized and support a finding that continued detention is needed to prevent him from fleeing or harming the community." German Santos, 965 F.3d at 213–14. That is the standard the IJ must apply. See id.

5

Id.

Subsequently, on June 1, 2026, Tchouala appeared before IJ Corey Combs by video teleconference. (Doc. 27-14, Resp. Ex. 13 at 2).  IJ Combs conducted what he described as an "individualized bond hearing" and expressly referenced the court's prior order. (Doc. 27-13, Resp. Ex. 12 at 1; Doc. 27-14, Resp. Ex. 13 at 4).  The IJ Combs applied the standard set forth in the court's memorandum by placing the burden on the government. (Doc. 27-14, Resp. Ex. 13 at 4).  He ultimately concluded that Tchouala posed a flight risk. Id.  As a result, Tchouala remains detained at Pike CCF.

Dissatisfied with that determination,  Tchouala filed the instant motion to enforce.[3]

On behalf of the respondent, the United States Attorney's Office for the Middle District of Pennsylvania opposes Tchouala's motion to enforce. (Doc. 27). The government challenges jurisdiction and argues that Tchouala must exhaust administrative appeals. (Id. at 5).  Alternatively, the government contends that the motion should be denied because Judge Combs conducted the bond hearing in accordance with the court's directives. (Id.)

---

[3] Tchouala also filed a motion requesting that the undersigned conduct a bond hearing, (Doc. 21), a motion to update the status of this case, (Doc. 22), a motion to expedite a ruling, (Doc. 23), a motion for a temporary restraining order, (Doc. 24), a motion requesting that the court analyze additional caselaw, (Doc. 28), and a motion to update credentials, (Doc. 31).

Although the government's jurisdictional argument misses the mark, its alternative argument is well taken. Accordingly, Tchouala's motion to enforce will be denied.

**Jurisdiction**

Generally, the court has jurisdiction over habeas petitions pursuant to 28 U.S.C. § 1331 and § 2241(a).  Respondent argues that the court lacks jurisdiction over Tchouala's motion to enforce due to a provision found within 8 U.S.C. § 1226.  Under the statute, "[n]o court may set aside any action or decision by the Attorney General under this Section regarding the detention of any alien or the revocation or denial of bond or parole." 8 U.S.C. § 1226(e).

Two strands of authority prevent the court from summarily denying Tchouala's motion to enforce for lack of jurisdiction.

First, the court may liberally construe Tchouala's as a motion to enforce a conditional grant of the habeas writ.  Conditional writs accommodate governments.  That is, a court may hold that some infirmity justifies relief but also provide the government with a time window to cure the error.  See Haskell v. Folino, 461 F. Supp. 3d 202, 210 (W.D. Pa. 2020) (citing Satterlee v. Wolfenbarger, 453 F.3d 362, 369 (6th Cir. 2006) and Phifer v. Warden, 53 F.3d 859, 864–65 (7th Cir. 1995)).  In such scenarios, district courts maintain continuing jurisdiction to address alleged noncompliance with a conditional writ.

Gibbs v. Frank, 500 F.3d 202, 205 (3d Cir. 2007) (citing Phifer, 53 F.3d at 865;

Mickens–Thomas v. Vaughn, 355 F.3d 294, 303 (3d Cir. 2004)); see also

Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir. 2011) (explaining that an

immigration detainee was "correct that the district court had authority to review

compliance with its earlier order" directing that the detainee receive a bond

hearing before an immigration judge); Shonhai v. Lowe, No. CV 3:24-229, 2026

WL 538865, at *6 (M.D. Pa. Feb. 26, 2026) (Mannion, J.) (collecting district court

cases).

The court's prior order directed the respondent to provide Tchouala an

individualized bond hearing within 14 days in accordance with the analysis in the

accompanying memorandum.

Assume, however, that respondent failed to comply with that directive.

Under those circumstances, there would be no reasonable jurisdictional dispute

if, after providing notice, the court entered a subsequent order directing

Tchouala's release based on respondent's noncompliance.

Here, Tchouala contends that the bond hearing he received failed to satisfy

the constitutional requirements set forth in the court's prior order.  Under these

circumstances, the court sees no reason why it would lack jurisdiction to

determine whether the government complied with that order.

8

Second, despite its jurisdiction-stripping language, Section 1226(e) contains no explicit provision barring habeas review. Demore v. Kim, 538 U.S. 510, 517 (2003). The Third Circuit has also never used Section 1226(e) to preclude petitioners from raising a constitutional challenge to the way an immigration bond hearing was conducted. See Borbot v. Warden Hudson Cnty. Corr. Facility, 906 F.3d 274, 279 (3d Cir. 2018) (noting that the habeas petitioner sought "to compel a second bond hearing despite alleging no constitutional defect in the one he received."); Sylvain v. Att'y Gen. of U.S., 714 F.3d 150, 155 (3d Cir. 2013) (citing Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir. 2011) ("[Section 1226(e) ] does not limit habeas jurisdiction over constitutional claims or questions of law.")). Further, in non-precedential opinions, the appellate court has recognized such jurisdiction. Ghanem v. Warden Essex Cnty. Corr. Facility, No. 21-1908, 2022 WL 574624, at *2 (3d Cir. Feb. 25, 2022) ("Although we lack jurisdiction to review any discretionary determinations underlying the IJ's bond decision, we may review whether the bond hearing was fundamentally unfair."); Quinteros v. Warden Pike Cnty. Corr. Facility, 784 F. App'x 75, 77 (3d Cir. 2019) ("Though we may not review discretionary decisionmaking involved in denial of a bond, we retain the power to review the legal standard underlying immigration officials' actions and to evaluate legal and constitutional claims on that basis.").

9

The court thus has jurisdiction to consider Tchouala's motion to enforce on its merits.[4]

**Analysis**

IJ Combs determined that Tchouala poses both a danger to the community and a flight risk. (Doc. 27-14, Resp. Ex. 13 at 4-5). Tchouala nevertheless contends that the hearing was constitutionally deficient. (Doc. 19, Motion to Enforce at 5-6). According to Tchouala, while making the danger to the community determination, IJ Combs focused almost exclusively on petitioner's criminal convictions while failing to meaningfully consider evidence of his rehabilitation, educational achievements, family support, and other evidence of positive change. (Id. at 3-4). Tchouala further argues that the IJ's flight-risk determination is unsupported by the record. (Id. at 8). On that basis, Tchouala requests immediate release from ICE custody. (Id. at 9). Neither argument warrants relief.

---

[4] The government also offers up the petitioner's failure to exhaust administrative remedies as a bar to hearing the motion. The motion is a request for the court to review the IJ's compliance with its previous conditional habeas order. Thus, there would be nothing left for the petitioner to exhaust. A.D. v. Oddo, No. CV 25-460J, 2026 WL 1251470, at *3 (W.D. Pa. Feb. 12, 2026). In any event, the exhaustion requirement would be prudential in this case, i.e., judge-made and discretionary. Prudential exhaustion requires the court "to balance the alien's interest in prompt access to the federal courts with the government's institutional interest in exhaustion." United States v. Dohou, 948 F.3d 621, 628 (3d Cir. 2020) (citing McCarthy v. Madigan, 503 U.S. 140, 144 (1992)). Tchouala has been detained under Section 1226(c) since May 28, 2025. Therefore, any exhaustion requirement is excused.

10

Upon review, the court concludes that IJ Combs conducted the individualized bond hearing required by the court's prior order.  The hearing lasted approximately 12 minutes. (Doc. 27-14, Resp. Ex. 13 at 2).  Petitioner was represented by counsel. See Goldberg v. Kelly, 397 U.S. 254, 270–71 (1970). A complete record of the proceedings was created. See Marincas v. Lewis, 92 F.3d 195, 203 (3d Cir. 1996).  At the outset of the hearing, the IJ expressly acknowledged this court's prior decision and correctly stated that "the burden is on the government as outlined in [the undersigned's] order to justify the respondent's continued detention by clear and convincing evidence. Either because his continued detention is necessary to prevent him from fleeing or . . . harming the community." (Doc. 27-14, Resp. Ex. 13 at 4).  In doing so, the IJ recognized that this hearing proceeded under the constitutional framework articulated in German Santos.

The record likewise demonstrates that IJ Combs considered the petitioner's current circumstances, rather than solely rely on his past criminal conduct. See Chi Thon Ngo v. I.N.S., 192 F.3d 390, 398 (3d Cir. 1999), amended (Dec. 30, 1999) ("The fact that some aliens posed a risk of flight in the past does not mean they will forever fall into that category. Similarly, presenting danger to the community at one point by committing crime does not place them forever beyond redemption.").

11

During the hearing, the government first presented its position that Tchouala remained a danger to the community and a flight risk. Counsel for DHS emphasized petitioner's conviction for money laundering, the sentence imposed pursuant to his plea agreement, and the seriousness of the underlying criminal conduct. The government argued that no amount of bond would adequately mitigate those concerns.

Although Tchouala bore no burden of proof, his counsel was afforded a full opportunity to respond. See Abdulai v. Ashcroft, 239 F.3d 542, 549–50 (3d Cir. 2001). Counsel acknowledged petitioner's criminal conviction but emphasized that the Tchouala had complied with all federal court orders, accepted responsibility for his conduct, completed his criminal sentence, and had no other criminal history. Counsel further highlighted petitioner's strong ties, including his United States citizen spouse and five-year old daughter. Counsel also pointed to the willingness of a United States citizen sponsor to assist Tchouala and ensure compliance with any release conditions. Counsel ultimately argued that a substantial bond amount coupled with appropriate conditions of release would sufficiently address any concerns regarding dangerousness or flight.

These are the same considerations that Tchouala now contends the IJ ignored. The record demonstrates otherwise. Petitioner's counsel was permitted to fully present those arguments, and IJ Combs expressly stated that he had

12

reviewed the documentary evidence submitted by both parties before rendering his decision.

At the conclusion of the hearing, IJ Combs issued an on the record decision explaining the basis for his ruling. Id. Accordingly, Tchouala received a decision grounded in the evidentiary record and sufficiently reasoned to permit this court to determine whether the hearing complied with due process. Id.

To be sure, Tchouala disagrees with IJ Combs's ultimate legal conclusions. But that disagreement does not establish that the hearing failed to comply with the court's directives. Nor does it authorize this court to reweigh the evidence underlying the IJ's dangerousness and flight-risk determinations. Borbot, 906 F.3d at 279 (discussing 8 U.S.C. § 1226(e)).

During the bond hearing, IJ Combs stated:

> The first thing the court looks to is danger. As the court stated I have looked through all the documents about the criminal history. I have also ready [sic] through all the documents the petitioner has submitted. The court notes that the petitioner pled guilty to conspiracy to launder money instruments. He was sentenced to 18 months imprisonment 2 years supervised release. This was appealed up to the 5th Circuit. So far nothing has come . . . from that. The court would note that looking through the presentence investigation report this was . . . laundering of money that was fraudulently obtained by people. Money that was criminally derived property from one individual [,] it was $64,000 who she thought she was putting the down payment on her house as escrow and that money was lost as is outlined in the victim impact statement.

13

The total money laundering activities the petitioner was involved in is apparently about $935,000 and the victim impact shows a monetary loss from the victims in the range from $168,000. Well the petitioner was not the one directly for . . . committing the fraud, he was an integral part of this system. He was part of the system receiving the money, transferring the money, withdrawing the money in different ways. The court does also note the [petitioner] when initially interviewed downplayed his situation. He claimed he did not have a business. He, there were various stories before ultimately the [petitioner] ended up pleading guilty to this. When the court considers everything in this record under the totality of the circumstances the court does find that the department has met its burden.

[N]ormally you look at danger to persons or property and this would clearly would fall under it given all of these circumstances. Alternatively the court will address flight risk in this case. Although the [petitioner] does have a legal entry on a F1 visa and has been here since August 2016, the court has flight risk concerns. First of all, all of this criminal activity and the [petitioner's] downplaying of it when he was initially interviewed by the FBI. The court thinks goes to show a disregard of the laws of the United States and causes concern under the Guerra factors. As to the [petitioner's] flight risk, the [petitioner's] application in immigration court has also been denied. It has had a slightly unusual procedural history where it went up to the BIA was remanded back and has now been certified back to the BIA and is pending there again for decision.

But the court does have concerns . . . although it is not a final order of removal, the [petitioner] does have an order of removal that is on appeal. When the court considers all of the factors, the court would also find that the Department has met its burden to demonstrate that the [petitioner] is a flight risk. So for these reasons the court will deny the [petitioner's] request for bond today.

(Id. at 4-5).

14

As for the tenor and tone of the hearing, the IJ did not give this matter "grudging and perfunctory review." Chi Thon Ngo, 192 F.3d at 398.  Absent any other evidence from Tchouala, the court concludes that Tchouala received a fair hearing before a neutral and impartial IJ consistent with the requirements of due process.  Petitioner's motion to enforce asks the court to revisit the merits of the IJ's bond determination.  Given the fundamentally fair proceedings in this case, the court lacks authority to do so.

Consequently, for the reasons set forth above, it is hereby **ORDERED** that:

1) Baudelaire Tchouala's motion to enforce, (Doc. 19), is **DENIED**;

2) Tchouala's remaining motions, (Docs. 21, 22, 23, 24, 28, 31), are likewise **DENIED AS MOOT**; and

3) The Clerk of Court is directed to **CLOSE** this case.

Date: 7/16/26

JUDGE JULIA K. MUNLEY
United States District Court